TOWN OF OYSTER BAY et al., Respondents, v. AVALON YACHT AND CABANA CLUB, INC., et al., Appellants, et al., Defendants.— In an action for a declaratory judgment and injunctive relief with respect to certain real property in Massapequa, New York, defendants Avalon Yacht and Cabana Club, Inc., Ernest J. Burzumato and Robert A. Wilkinson appeal from a judgment of the Supreme Court, Nassau County, dated March 22, 1971, which (1) declared *inter alia* that a certain nonconforming use had been forfeited by reason of substantial alterations to the premises and the manner of their use since 1929 and (2) enjoined any nonconforming use. Judgment modified, on the law and the facts, so as (1) to declare the subject use a conforming use until January 27, 1953, (2) to enjoin any enlargement of that use in time, manner or space, beyond that which existed on January 27, 1953, and (3) to strike therefrom all provisions inconsistent with items (1) and (2) hereof. As so modified, judgment affirmed, without costs. Before November 1, 1929 the subject premises were used as a community beach club. On that date the plaintiff town enacted its first build-

ing zone ordinance; and under that ordinance the beach club remained a permitted use as a private club. On January 27, 1953 the town amended its zoning ordinance so as to place the subject premises in a " C " Residence Zone. In that zone a private club was permitted only if authorized by the Town Board as a special exception. As no special exception was ever sought or granted for the subject premises, the beach club became a valid nonconforming use upon enactment of the 1953 amendment of the zoning ordinance. In April, 1962 the zoning ordinance was again amended — this time to provide that a nonconforming use which was in existence on January 27, 1953 may be continued, provided "(a) No structural or substantial alterations are made except repairs required by law or ordinance. (b) The use is the same identical use which was in existence prior to the effective date of this Ordinance. (c) There has been no interruption of the use for a period exceeding twelve (12) months." This 1962 amendment further provided that any violation of those provisions would result in a forfeiture of the right to continue the nonconforming use. The record discloses that, between 1953 and 1970, certain facilities of the beach club (mainly its restaurant) had been substantially enlarged and converted from seasonal, private-club use, to year-round, public use. In our opinion, these changes in physical facilities and manner of operation constituted an unauthorized enlargement of the nonconforming use in time, manner and space and consequently made the present use not identical with that which existed on January 27, 1953. Hence they violated the provisions of the 1962 amendment of the zoning ordinance. We are not inclined to declare the nonconforming use of the premises, as it existed on January 27, 1953, forfeited because of these violations of the ordinance; and believe that, in light of all the circumstances here present, such nonconforming use may properly be permitted to continue. However, any enlargement of that use in time, manner or space, beyond that which existed on January 27, 1953, should be enjoined. Munder, Acting P. J., Latham, Shapiro and Benjamin, JJ., concur; Gulotta, J., dissents and votes to reverse the judgment and to remit the case to the Special Term for entry of a judgment consistent with the following memorandum: I agree that there was an established, lawfully permitted use of the premises, Nassau Shores, as a community beach club, consisting of a beach, sea water pool, lockers and sanitary facilities, parking area, bulkheading and a facility for the sale of sandwiches, frankfurters, hamburgers and cold drinks, when the 1953 ordinance amendment continued such a use as a permitted use only when authorized as a special exception. Since no special exception was sought or obtained, the use therefore continued as a lawful nonconforming one. Special Term held that substantial unauthorized alterations were made to the premises between 1953 and 1970, including the creation of a year 'round restaurant facility, and that these unauthorized alterations and changes, standing alone, were sufficient to cause the forfeiture of the nonconforming use. In my opinion, the town did not prove that the repairs and alterations made during this period involved structural alterations requiring building permits or, if structural replacements were made, that they were not required by law or ordinance to insure the safety of the building. It was not proved that the modernization of dining facilities on the second floor of the east building was "substantial" in relation to the totality of the use. In my opinion, the basic nature of the use as a private beach club has remained the same, notwithstanding an increase in time or intensity of use resulting from the progressive modernization of the restaurant facility (cf. *Marcus* v. *Village of Mamaroneck*, 258 App. Div. 328, revd. on other grounds 283 N. Y. 325; *People* v. *Perkins*, 282 N. Y. 329; *Matter of Gscheidle* v. *Murdock*, 280 App. Div. 74; see 67 N. Y. Jur., Zoning and Planning Laws, § 95; but see *Beerwort* v. *Zoning Board of Appeals of Town of Coventry*,

144 Conn. 731). I think the beach club is presently a lawful nonconforming use, subject to the town ordinances which regulate such uses. The town has no authority to supervise the items on the restaurant menu, the details of management, or the internal layout of the club, under the guise of enforcing the zoning ordinances. It is the essential character of the use which is the proper subject of supervision by the town. Nor may the town in effect nullify the use by changing its position and now insist that building permits be procured to cover the extensive work done to make the existing buildings safe and habitable, which was done at the insistence of the Town Building Department, while simultaneously refusing arbitrarily to issue such permits. The town's sphere of control in this area is to see that the alterations made conform to the Building Code of the town and to issue the proper permits, if indeed they are required under the provisions of that code.